We have three cases for argument this morning. Mr. Tholander, is that right? When you're ready. May it please the court. The most significant issue in this appeal is the summary judgment of non-infringement granted with respect to Microsoft customer Dell's use of IIS ARR. Now the case did proceed to trial on a different product, Microsoft's proprietary front door system. And while that judgment rests on legal errors, which we've raised here, it represents just a small part of the infringement that was alleged. And the court below disposed of the bulk of this case when it decided on summary judgment, really in just a single short paragraph, that the Dell system, there was no indication that the Dell's use of IIS ARR satisfied two plain elements. And that was dynamically generating element and the concurrent processing element. Where in the expert's declaration does it discuss those two limitations? Dr. Jones, our expert, talked about the dynamic web generation at 8798. And he explained that using the Dell materials, configuration materials, and the architecture diagrams which are in there, those pictures are also at page 20 and 21. Can you identify which sentence you're referring to at 8798 right now, just so that we know exactly what support you're relying on? He said, now some of this is confidential, so I'll be careful. But basically if you look to here, about the middle of that first paragraph there, once an incoming request is load balanced and sent to the page server, that page server will take data from the data tier process and generate dynamic response. Now there's no dispute that you don't call to a data tier for a static web page. You only do that if you're populating a page with dynamic materials. What about the concurrent processing? That seems to be the real problem for you on the Dell stuff. Okay. On that one, I would point the court to 8751. And there, Dr. Jones opines that ARR is designed to and will... Just to make sure we're following you exactly, which exact paragraph are you referring to? Paragraph 125. Then you can... Those first two sentences, basically. But where does it say Dell does that? It sounds like it's capable... I mean, isn't the problem here is this stuff is all clearly capable of it. Yeah. But you actually have to show that they're doing it to have direct infringement. Sure. And I would point the court there to the case study that Microsoft did of Dell's system. And that's found, you can find that at 9089. So just before we move there, this thing you just cited, these sentences you just cited us on, 8751, paragraph 125, just show the capability. They don't actually show that Dell does that. They don't say anything about Dell's actually doing that. Well, I disagree with that because he cites the source code and he says that when you use ARR, while the page server is processing, the web server will continue concurrently to receive, process, and return web pages. Is this source code that cited Dell's source code? No, it's ARR. Again, is that the problem? Sure, this is capable of doing it, but it's also capable of operating in different ways, right? You have to show Dell actually does this. Yes. And if we can look at the case study. Did you say 9051? 90, it's 9087, sorry, to 9089. Actually, the whole study is relevant, but if you look at the very last paragraph on 9089, it's printed sideways, so it's a little bit hard to see. There's a quote there where they talk about they handled 1800 concurrent connections. Right, so this is you're asking us to draw an inference. Did you just say 1800 concurrent connections? That's right. Where's the word concurrent? Well, 1800 connections, so he's talking about our Windows Server 2008 scaled when it handed versus the 1000 connections handled by the old server. And what he's talking about is that as their expert explained, the system comes standard with 1024 concurrent connections. Now, on a high level, if we can just step back for one minute, this whole system, which requires three computers, a web server and two page servers, only really makes sense if you are concurrently processing. If you're only using one computer at a time, you don't need two computers or three computers. Where is that testimony? Where is that explained by your expert? Yeah, well, that testimony is, I think, in Dr. Jones explains that particular websites must frequently process thousands of current requests for dynamic contact. That's at 9695. There was the, again, I mean, does he spell it out maybe as clearly? I think, honestly, there was, he didn't think this was going to be a dispute because of what I've just explained. Dell processes 3.2 billion requests per quarter, according, that's also in this case study. There is, you can call it an inference, but again, this is summary judgment. The only question is, have we raised a genuine material of fact with respect to whether Dell does, in fact, concurrently process? And you have to review this evidence in the light most favorable to parallel networks. In other words, when they're saying, the demands on our system were so great that we had to up the standard 1,000 connections. And, I mean, the point is you're running them concurrently. That's why there's 1,000 connections, if you only needed one connection. Anyway, so, but they say the demands on our system were so great that we had to increase the standard 1,000 connections to 1,800 connections on a single server. Viewing that evidence in the light favorable to us, I don't think there's any possible way you can come to the conclusion that there's no concurrent process. But there's nothing that says this. I mean, I don't understand why you couldn't have got your expert to actually opine and say, based upon all of these, the possibilities of this, the way the system would operate and stuff, Dell must need this concurrent limitation. But he didn't say that. And you're asking that's based upon what's essentially a turning argument to make that inference. I don't think that's right, Your Honor. If you go back to 8751, he doesn't say that in some cases ARR will do this. He says that in use, ARR will concurrently process. Are you saying that in all uses of ARR, it will do this? I think that's a fair reading of that testimony. I mean, I guess it's maybe metaphysically possible that you would only ever send one request. But that's not what he testified. He testified that it will do this. That's the testimony. Did you say 9051? Sorry, 8751. And then when he gets to Dell, he makes the clear connection. He says, Dell has told us that they use ARR in this way. Where is that? I mean, I don't understand why you're not pointing us to that. If he actually said something specifically about Dell concurrently processing. Well... Right. You're not going to find it, right? He doesn't say Dell concurrently processes. Not in those words. But he's told us that ARR concurrently processes. And then he tells us that Dell uses ARR. So again, I don't see how that could... If you're taking every inference in our favor, it seems to me very easily satisfies that threshold standard. And I would say that on appeal, Microsoft does not appear to dispute that Dell processes a number of requests at the same time. They basically say that. They argue that, well, maybe it's not concurrent processing because maybe the web server isn't processing at the same time. Or maybe the web server doesn't do any of the processing ever. Or maybe the page server doesn't do any of the processing ever in the Dell system. But we know that's not true because, again, the court found on summary judgment that there was no dispute that the accused web servers do processing. And the testimony about the page servers that we looked at earlier shows that page servers do the dynamic generation. So in our view, if you look at this evidence in the light, the summary judgment view, where we get the inferences, I don't think there's any way that that doesn't raise a question of material fact with respect to whether Dell does concurrent processing. If I can turn to the survey for a minute. Now the survey, the district court found the survey was both irrelevant and unreliable. And we believe there's clear error on both of those fronts. So with respect to relevance, the survey was designed to find whether Microsoft customers use it in this general configuration of IAS with ARR and accused load balancing algorithm and across two or more page servers. Now again, the district court, similar, found that it wasn't relevant. And really because the court said different things about how many claims were sort of implicated by this. But the two things that the district court pulled out were, again, the dynamic generation and the concurrent processing. So there wasn't evidence of those things. And you didn't ask in the survey about those specific limitations. They did. Again, there was a threshold question about dynamic generation. So before you got to, you know, the threshold question was how many number of requests. What about the concurrent processing? The concurrent processing, right, there wasn't a specific question about concurrent processing. But again, 40% of the respondents indicated that they have systems that generate over one million dynamic web pages per day. And they use this configuration with multiple computers. So you're into your rebuttal. You can keep going or you can stay. I'll preserve my turn. Thank you. May it please the court. I would like to address the questions the court had about concurrently processing. What counsel says is that the sheer sort of number of requests must mean that there has to be concurrent processing taking place. And we don't dispute that there might be concurrent processing taking place. That's what we do dispute. And what the court so found is that the claim is very specific as to how that concurrent processing has to be taking place. What has to happen is that while the page server is processing the request for the dynamic web page, the web server has to be concurrently processing other requests. And that is where there is literally zero evidence, either from Dr. Jones, Parallel Networks expert, or from any documents. And in fact, we proffer at page 28 of the red brief three systems that would use ARR in this weighted round robin that they talk about, none of which would be concurrently processing the way the claim requires. One system might be where all web page requests, both dynamic and static, are being processed by the page server. Therefore, you don't have the concurrent processing going on to the web server. Another possibility is that a system where all dynamic web page requests are being prosecuted, processed by the web server. Therefore, you don't have the concurrent processing as required by the claim. And the third possibility is where all dynamic web page requests are being processed by a page server and other requests are being processed by a different server, not the web server. Those are three systems right there where the use of ARR does not result in the concurrent processing as described by the claim. Do I understand with respect to the survey that what the district court judge was saying is that it's not enough to say that you have ARR because of these different ways that it could have been implemented? That, exactly, Your Honor. In fact, what the judge did was he walked through the three limitations of the claim. So the claim has one limitation is routing, that it's required you route a request for a dynamic web page to the page server. And it's a very lengthy, it requires all sorts of steps, the routing limitation does. The next limitation is processing the request at the page server, while there's concurrent processing going on of another request at the web server. And the third is that the page server then dynamically generates a web page. And so what district court judge, well, I'm sorry, appellate court judge Jordan, sitting by designation of the district court judge in this case, went limitation by limitation and said, you never ask that question. The survey asked. But the survey doesn't have to go through each of those claim limitations, does it? It's only in the odd circumstances like here where you would have to do that. Is that correct? The survey doesn't have to prove. I mean, under Vitamix. Absolutely. And Judge Jordan addressed Vitamix, saying the survey doesn't have to prove infringement, but it somehow has to be linked to the claim. And I want to read his language for Vitam because he stated it so well. So in his granting of the survey, what he did is at Appendix 37, he said, the asserted claims require that a web server be used to manage requests for dynamic web pages. That's step one. He said, yet the survey didn't ask respondents if they used the accused products to manage requests for dynamic web pages. So there's no link there at all. Not just that it didn't show infringement. They just didn't even ask if they were using the accused products for that purpose. The next is the claims require the web server to concurrently process multiple requests. Yet the survey did not ask the respondents if they used the accused product to concurrently process multiple requests. And lastly, the claims require the use of a page server to dynamically generate a web page. Yet the survey did not ask respondents if they used the accused product to dynamically generate anything. Let's say that it was inherent that those three limitations were satisfied by the use of ARR, just hypothetically, okay? Then you wouldn't have to ask those specific questions in a survey. Isn't that right? Probably. The problem is that I can't agree with the hypothetical about it being inherent. I understand. I said hypothetically. I understand. Again, that's not your position in this case. Nor was it what? I'm sorry. I didn't mean to interrupt, Your Honor. I just want to know if I'm understanding the case thought correctly and understanding Judge Jordan's concern about that survey correctly. I think what it is is that it's not enough to say that this is ARR because there's so many different ways to implement ARR that it's not necessarily going to satisfy the claim limitations, so you actually have to ask about the claim limitations. I just want to know if that's what you're saying. That is what we're saying, Your Honor, exactly, that if it's a situation like in Vitamix, for example, or the case involving the STRS where it would necessarily infringe, then you don't have to do that. But here, and Judge Jordan pointed it out in Appendix 38, the omissions are even more significant when one considers that the accused products can be used for a variety of non-infringing purposes. So that's exactly what Your Honor is saying. If you don't have that situation, then maybe you don't have to ask those questions. But if you do have this situation, then you have to be specific, not just that ARR is being used, but it's being used in an infringing fashion versus a non-infringing fashion. So did I answer Your Honor's question? Yes, thank you. Thank you. I'm not sure the Court had any other questions of counsel, so there's just a couple of issues that were brought up in the reply brief that we haven't had an opportunity to address. One is that in the reply brief, it's argued that for the first time that Judge Jordan brought up the fact that there had to be only some processing going on at the web server and not a significant amount or a substantial amount. And it was argued in the reply brief that this is new to parallel networks, this is the first time this came up, when in actuality this is exactly what parallel networks argued to the judge during the summary judgment and Daubert motions. So if we turn to Appendix 12495, there was a discussion about intercepting. And at 12495, at page 74, this is parallel networks arguing to the court, you're going to necessarily receive and process. I'm sorry, this is page 74, line 21, and it's at 12495. You're going to necessarily receive and process at some level the request before interception occurs. You have to do that in order to make a decision whether to intercept it or not. So this is parallel networks explaining to Judge Jordan, so you're going to have to do some processing. And then if we go to page 75, at that same appendix citation, line 10, parallel networks says to the district court, the key to the patent, when you read it, is that there has to be an interception that occurs, and I think this is what the agreed construction goes to, there has to be an interception that occurs before the web server does something substantive to it. So where Judge Jordan got the idea that there could be some processing at the web server in order to decide whether it needs to be sent to the page server, in other words, whether this is a request for a dynamic web page, there has to be some processing occurring at the web server. Nothing substantive, no substantive processing can occur at the web server. And so it's no surprise that Judge Jordan then, at that same appendix citation, on page 77, line 5, says, right, yes, I've got your argument. I've got your argument that there has some level of processing has to occur. It has to occur in order for it to be sent to the interceptor. So when parallel networks says in their reply brief that the first time they heard of this different levels of processing was in Judge Jordan's post-trial denial of JAMAL, it's just simply not correct. That is not what happened. They argued it to the district court during the summary judgment motion, hence why he got the idea of that, that some processing is allowed at the web server but not substantial or significant or, as they characterized it, substantive. Was there an agreed-upon claim construction of intercepting prior to that summary judgment colloquy? There was. What did it talk about? It simply talked about that the request had to be intercepted before it was processed. And so then there became the idea. So if you take that plainly, it has to be intercepted before any processing. That's what we argued, that summary judgment for no direct infringement by Microsoft, that was rejected by Judge Jordan, who said, well, there has to be some processing because how do you figure out if the request is a request for a dynamic versus static web page? You have to figure that out in order to decide whether you're going to route it to the page server. So that's how that whole discussion came about. But it was an agreed-upon construction. And then we followed that construction at trial where our expert and our fact witnesses opined that there was a substantial amount of processing that went on at the web server, which I would, unless the court has any further questions, conclude my remarks with then. That's one of the reasons the jury ultimately found that Microsoft doesn't infringe. So you can use ARR the way Microsoft uses it, and there is no infringement. And we are on three grounds. Intercepting that, in fact, we do a substantial amount of processing at the web server before the request is sent. Releasing, we never release the web server to process other requests, which is just what we were talking about vis-à-vis Dell. And lastly, that it has to be a single request, and our system uses multiple requests. So even if somehow this court decided that there was some evidence that should have let the Dell question go to the jury and that there simply isn't, what would have happened is the same result. The jury would have found no infringement. Because if Dell is using our system the way we use our own system, we didn't directly infringe, so we certainly weren't inducing Dell to directly infringe since we weren't directly infringing. And unless the court has any other questions, I would give three minutes and 50 seconds back to the court. Thank you. Thank you very much. Thank you. For one thing, the trial was not on ARR. So if there is a question coming back about issue preclusion, that hasn't been raised yet. They would need to show that the systems are identical for all three claims. If I could say about your comment, Judge Hughes, about the intercepting limitation, which was that the plain language says that it would have to be before any processing. And I'll submit that there are two ways to read that. And one is what you just described, which is Microsoft's first infringement. And the other is that phrase, before the request is processed, means before the processing, present tense, moves to the past tense, is processed. And that's really the point. You intercept it before it's processed, before the process is completed. So in other words, when we said the substantive, that was a way of saying, well, yes, you intercept it before the page is generated, essentially. We're not being inconsistent. And there's no limitation in there about a significant amount of handling. And really, at trial, they didn't point to any kind of generation that was done by the web server, that was done by the page server. But isn't the limitation on handling all done by the first part of that, which is you divert the handling before processing? You divert the handling. Well, then the question is, what is handling? And handling is that process. To me, it sounds like you're trying to blur the lines between handling and processing. The court treated those as identical. And if you read the JML order, it uses, actually, the word processing instead of handling. They made no distinction between those two terms. Well, then, if that's the case, then why isn't the agreed upon construction, you divert it before any handling or processing is done? You divert the handling. You're handling it. You divert that before the claim is processed. So, as I explained, before the processing is finished, you divert it. In other words, the web server is not generating the page. So, if handling is the same as the processing, if the web server can handle it, i.e., process it substantially, then why is that diverting? Because it is not generating the web page. It's diverting it before the web page is generated. But that's not what the claim construction says. It doesn't say anything about diverting the handling before the web page is generated. It says before it's processed. That's right. And we know because Judge Jordan said that cannot be read to mean no processing occurs at the web server. So, it must be read to mean that it is processed as a past tense. In other words, before the claim is processed. My time is up, Your Honor. Thank you. Thank you.